**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

NORFOLK SOUTHERN RAILWAY
COMPANY,

        Plaintiff,

vs.                                    Case No. 3:13-cv-576-J-34JRK

FLORIDA EAST COAST RAILWAY,
LLC,

        Defendant.

_____

## ORDER

This case is before the Court on Plaintiff Norfolk Southern Railway Company's ("Norfolk") Motion For Stay Or Abatement Of Arbitration And Supporting Memorandum Of Law, (Doc. 5; Norfolk Motion to Stay Arbitration), and Defendant Florida East Coast Railway, LLC's ("FEC") Motion To Compel Arbitration And To Dismiss Or Alternatively Stay Litigation Pending Arbitration. (Doc. 15; FEC Motion to Compel Arbitration). The two pending motions, which both raise the issue of whether the dispute between the two railway companies should be submitted to arbitration, have been fully briefed, (see Docs. 16, 21, 34, 35),[1] and are ripe for consideration.

---

[1] In response to the pending motions, the parties have filed the following: Defendant's Response In Opposition To Norfolk Southern's Motion For Stay Or Abatement Of Arbitration And Supporting Memorandum of Law (Doc. 16; FEC Response); Plaintiff's Response and Incorporated Memorandum of Law Opposing Defendant's Motion To Compel Arbitration And To Dismiss Or Alternately Stay Litigation Pending Arbitration (Doc. 21; Norfolk Response); Defendant's Reply And Incorporated Memorandum Of Law To Plaintiff's Response And Incorporated Memorandum Of Law Opposing Defendant's Motion To Compel Arbitration And To Dismiss Or Alternatively Stay Litigation Pending Arbitration (Doc. 34; FEC Reply); and Norfolk Southern's Sur-Reply To Florida East Coast Railway's Reply And Incorporated Memorandum Of Law To Norfolk Southern's Response And Incorporated Memorandum Of Law Opposing Florida East Coast Railway's Motion To Compel Arbitration And To Dismiss Or Alternatively Stay Litigation Pending Arbitration. (Doc. 35; Norfolk Sur-Reply).

## I.     Underlying Dispute[2]

### A.     The 1995 Haulage Agreement

In 1995, Norfolk, FEC, and non-party Georgia Southern and Florida Railway Company ("GS&F") entered into the Florida Intermodal Car Haulage Agreement ("Haulage Agreement"). (Doc. 28; Amended Complaint ¶ 12; Doc. S-4; Haulage Agreement). Pursuant to the Haulage Agreement, FEC agreed to provide rail haulage services for Norfolk's intermodal traffic between Jacksonville, Florida, the terminus of Norfolk's railway system into Florida, and FEC's locations in south Florida. Amended Complaint ¶ 14; Haulage Agreement at 1 and Article I. Thus, under the Haulage Agreement, FEC, the rail carrier that owned the railroad tracks has transported rail traffic over its railroad line for Norfolk, the tenant rail carrier. Amended Complaint ¶ 15.

Several of the terms of the Haulage Agreement are pertinent to the dispute presented here. The Haulage Agreement has a year-to-year term. Haulage Agreement Article XII; Amended Complaint ¶ 16. It restricts Norfolk's pricing of freight transported on FEC tracks as follows:

------

[2] The common issue in both Norfolk's Motion to Stay Arbitration and FEC's Motion to Compel Arbitration is whether the Court should compel the parties to arbitrate their dispute. Motions to compel arbitration are treated as motions to dismiss, pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure. See Owings v. T-Mobile USA, Inc., No. 3:12-cv-1385-J-12TEM, 2013 WL 4401824, at *4 (M.D. Fla. Aug. 15, 2013); Bell v. Atl. Trucking Co., No. 3:09-cv-406-J-32MCR, 2009 WL 4730564, at *2 (M.D. Fla. Dec. 7, 2009), aff'd 405 F. App'x 370 (11th Cir. 2010). A motion seeking to compel arbitration is a factual attack on the court's jurisdiction "as it asserts that a provision of an extrinsic document, an arbitration clause contained within the body of a contract, deprives the court of its power to adjudicate the [disputed] claims." Bell, 2009 WL 4703564, at * 3; see also Owings, 2013 WL 4401824, at *4. Here, the parties have presented the relevant contracts in dispute, as well as competing affidavits recounting their respective intent when entering into the contracts. For purposes of resolving the instant motions, the Court accepts the facts as alleged by the parties in their pleadings, and supported by the relevant contracts, as true. See Int'l Underwriters AG v. Triple I: Int'l Inv., Inc., 533 F.3d 1342, 1345 (11th Cir. 2008); Bell, 2009 WL 4703564, at *3; Northbrook Indem. Co. v. First Auto. Serv. Corp., No. 3:07-cv-683-J-32JRK, 2008 WL 3009899, at *1 n.2 (M.D. Fla. Aug. 1, 2008).

> . . . [Norfolk] will use its best efforts to establish rates for freight in containers and trailers in Haulage[3] that do not divert freight from or attract freight that otherwise would move in intermodal service offered by FEC or that is moving or otherwise would move in FEC's general carload rail service.   If FEC believes that [Norfolk] established or is maintaining rates likely to divert freight from or attract freight that otherwise would move in intermodal service offered by FEC or that is moving or otherwise would move in FEC's general carload rail service, FEC will notify [Norfolk] in writing of the rate(s) in question.  FEC and [Norfolk] promptly will meet to address FEC's objection to the [Norfolk] rate(s), and [Norfolk] will adjust the rate(s) as necessary to reflect the intent of the parties expressed in this Paragraph. Failure by [Norfolk] to adjust the rate(s) in question will be deemed a substantial failure on the part of [Norfolk] to perform its obligations under this Agreement, and FEC will have the right to terminate this Agreement and Haulage pursuant to Article XI. A.

Haulage Agreement Article II.A.2.   Additionally, the Haulage Agreement includes the following arbitration provision:

> Any dispute arising between the parties with respect to any provision of this Agreement, including but not limited to the meaning of "predominant" as that term is used in Article V, that cannot be settled by the parties themselves will be settled under the Commercial Arbitration Rules of the American Arbitration Association.   The decision of the arbitrator will be final and conclusive upon the parties hereto. . . . The measure of damages for the prevailing party will be the actual damages of that party; the arbitrator will not determine violations of criminal law and will

---

[3] The Haulage Agreement defines "Haulage" as:

> movement by FEC of [Norfolk] Equipment between each FEC Intermodal Terminal and Bowden Yard [Jacksonville], switching services by FEC at and to and from each FEC Intermodal Terminal before and after Haulage, and movement by FEC of Flatcars before and after Haulage between the Miami FEC Intermodal Terminal and Storage Tracks.  Haulage will be subject to the terms and conditions of this Agreement. . . .

Haulage Agreement Article I.F.

> not issue injunctive relief, award attorney's fees or punitive, incidental, consequential, treble or other multiple damages, or modify any provision of this Agreement, and the jurisdiction of the arbitrator will be so limited.

Haulage Agreement Article IX.

### B.   The 2008 Titusville Intermodal Agreement ("TIA")

On August 11, 2008, Norfolk and FEC entered into the Titusville Intermodal Agreement ("TIA").  Amended Complaint ¶ 19; (Doc. S-1; TIA).  The parties entered into the TIA to accommodate the fact that Norfolk was constructing an intermodal facility in Titusville, Florida, which was scheduled for completion no later than December 31, 2009.  TIA at 1 (Recital 3), and ¶ 1.b.  The TIA sets forth the terms for FEC to provide haulage services for Norfolk, to and from Titusville.  Amended Complaint ¶ 21.  Significant to the issues raised here, the TIA is entitled:

**Amendment No. 3**
**To**
**Florida Intermodal Car Haulage Agreement**
**(Titusville Intermodal Agreement - 2008)**

TIA at 1 (emphasis in original).  It contains the following Introduction and Recitals:

> This Amendment No. 3 to the Florida Intermodal Car Haulage Agreement between [FEC] and [Norfolk] . . . is made and entered into this 11 day of August, 2008 (this Amendment shall be called the "Titusville Intermodal Agreement - 2008" or "TIA").
>
> **Recitals**
>
> 1)     In 1995, the parties negotiated the Florida Intermodal Car Haulage Agreement (the "Haulage Agreement"), which governs haulage performed by FEC for [Norfolk] between Bowden Yard in Jacksonville, FL and specified destinations south of Jacksonville, including Miami, FL, but not including Titusville, FL.  Although the Haulage Agreement was never signed, the parties have adhered

> to its terms, and indeed have ratified the Haulage Agreement, as amended, . . . .
>
> . . .
>
> 3)      [Norfolk] will construct at its expense an intermodal terminal located adjacent to FEC's line of railroad at or near Titusville, FL (the "Facility").  FEC has agreed to provide haulage service of containers and trailers (the "Haulage Units") to and from the Facility in accordance with the terms of this TIA, as well as the Haulage Agreement.

TIA at 1 (emphasis in original).  In the TIA, the parties specifically address the relationship between the TIA and other agreements between FEC and Norfolk, including the 1995 Haulage Agreement:

> **Relationship to Haulage Agreement and Hurricane Agreement.**  In the event of a conflict between this TIA, the Haulage Agreement, and the Hurricane Agreement, the order of precedence is: (1) this TIA; (2) the Hurricane Agreement; and (3) the Haulage Agreement.  Except as modified by this TIA, both the Haulage Agreement and the Hurricane Agreement continue in full force and effect.

TIA ¶ 2 (emphasis in original).  Additionally, regarding the "general operational responsibilities of the parties," the TIA provides:

> (A)     Except as provided in this TIA or where inapplicable, as discussed below, the Haulage Agreement will govern haulage operations performed by FEC for [Norfolk] to and from the Facility. . . [T]he parties agree to review the Haulage Agreement to determine if technical amendments to the Haulage Agreement are necessary to make it consistent with the TIA.

TIA ¶ 3(A).  This same paragraph of the TIA also clarifies that references in the Haulage Agreement to "FEC Intermodal Terminals," will be construed as referring to the Norfolk

Facility in Titusville, in the context of the TIA. Id.[4]  The TIA has a 10-year term, beginning on

January 22, 2009, and with respect to the term of the TIA, states "the TIA specifically takes

precedence over the provisions of Article XII of the Haulage Agreement," which relate to the

term of the Agreement.  TIA ¶ 1a; Amended Complaint ¶¶ 22, 23.  Additionally, the TIA

provides that "All headings in this TIA are inserted for convenience only and will not affect

construction or interpretation of this TIA."  TIA ¶ 14.  Unlike the Haulage Agreement, the body

of the TIA does not include an arbitration provision.[5]

###    C.    Termination of Agreements

On February 28, 2011, FEC, by letter, terminated the Haulage Agreement, pursuant

to Article XII(B) of that agreement, with an effective date of February 28, 2012.  (Doc. S-2;

02/28/11 FEC Haulage Agreement Termination Letter); Amended Complaint ¶ 36.  In the

letter, FEC gives "notice of termination of the [Haulage] Agreement, as amended, but

---

[4]  Specifically, the TIA provides:

> . . . The Haulage Agreement references intermodal terminals in Florida
> operated by FEC.  The Facility will be operated by [Norfolk].  A defined
> term in the Haulage Agreement is "FEC Intermodal Terminals".  It is the
> intent of the parties that where applicable, the Facility will be part of the
> FEC Intermodal Terminals, even though it is not owned or operated by
> FEC . . . .

TIA ¶ 3(A).

[5]  Neither party has addressed the relevance of the Trackage Rights Agreement, referenced in
the TIA, see TIA ¶ 4(A)("Contingent Trackage Rights"), and attached to the TIA as "Appendix A."  The
parties agreed in the TIA that "In order to assure the levels of service described below, FEC agrees to
grant contingent trackage rights to [Norfolk] between Bowden Yard and the Facility, in accordance with
the Trackage Rights Agreement set forth in Appendix A."  TIA ¶ 4(A).  The appended Trackage Rights
Agreement, which is not dated or signed, contains an arbitration provision requiring the parties to submit
"[a]ny irreconcilable dispute arising between the parties with respect to this Agreement" to binding
arbitration under the Commercial Arbitration Rules of the American Arbitration Association.  TIA,
Appendix A, Trackage Rights Agreement, Article 20.  The Court reaches its decision here without
reference to the Trackage Rights Agreement.

excluding any traffic expressly covered by Amendment No. 3 [TIA] only to the extent termination of such traffic is expressly limited."   02/28/11 FEC Haulage Agreement Termination Letter.   FEC explains that it determined "that it is not in its best interests to continue its haulage business with [Norfolk] under the terms of the [Haulage] Agreement." Id.  Nevertheless, following the February 28, 2012 effective date of the termination of the Haulage Agreement, FEC has continued to provide haulage services to Norfolk to and from Titusville pursuant to the TIA.  Amended Complaint ¶¶ 39, 40.

On February 8, 2013, FEC gave notice to Norfolk by letter that, with respect to the TIA, and haulage between Jacksonville and Titusville, Norfolk is required to comply with the pricing provision of the Haulage Agreement.  (Doc. S-3; FEC Demand for Arbitration; 02/08/13 FEC Letter (citing Haulage Agreement, Article II.A.2)); Amended Complaint ¶ 42. In response, Norfolk denied that the pricing provision of the Haulage Agreement applied to the haulage services provided to Norfolk by FEC to and from Titusville pursuant to the TIA. FEC Demand for Arbitration; 03/12/13 Norfolk Letter; Amended Complaint ¶ 44.

On April 4, 2013, FEC filed a Demand for Arbitration with the American Arbitration Association ("AAA")("Arbitration Proceeding"), relying on the arbitration provision set forth in the Haulage Agreement.  (Doc. S-3; FEC Demand for Arbitration); Amended Complaint ¶ 47. In its Demand for Arbitration, FEC requested a "declaration of rights, damages and other appropriate relief with respect to the following contract [citing the Haulage Agreement, "as Amended by Amendment No. 3"] between the parties, which contains an agreement for arbitration."   FEC Demand for Arbitration.   FEC alleged that Norfolk breached "certain provisions contained within the Haulage Agreement and the TIA," including the Haulage

Agreement's pricing provision.  Id.  Specifically, FEC contended that Norfolk "breached its

obligation to use its best efforts to establish rates under the Haulage Agreement and the TIA

to avoid (I) diverting freight from FEC or (ii) attracting freight that otherwise would move in

intermodal service offered by FEC."  Id.    FEC requests

> that this arbitration be expedited and that a declaratory judgment
> be entered by the Arbitrator declaring that, as a result of the
> breaches by [Norfolk], the Haulage Agreement and TIA are
> immediately, and rightfully, terminable by FEC and are
> terminated and of no further force and effect as of the date this
> proceeding was filed and for such money damages and
> additional relief as may be appropriate.

Id.  Concurrently, FEC sent Norfolk a Notice of Default, contending that Norfolk "is in breach

of the 1995 Florida Intermodal Car Haulage Agreement (the 'Haulage Agreement'), as

amended by Amendment No. 3 dated August 11, 2008, between FEC and [Norfolk] relating

to the Titusville Intermodal Facility (the 'TIA'), to the extent not already terminated pursuant

to the February 28, 2011 Notice of Termination from FEC to [Norfolk]."  FEC Demand for

Arbitration; 04/04/13 FEC Notice of Default.  FEC advised Norfolk of its "intent to terminate

the Haulage Agreement and the TIA, and of its intent to obtain a ruling confirming its right to

terminate as part of the arbitration of the dispute."  Id.  Norfolk objected to the arbitration on

April 25, 2013, contending that the TIA does not include an arbitration provision, and that the

arbitration provision in the Haulage Agreement no longer exists because FEC terminated that

Agreement.  Additionally, Norfolk filed a counterclaim in the Arbitration Proceeding alleging

anticipatory breach and breach of contract against FEC.  (S-42; Norfolk Objection to

Arbitration); Amended Complaint ¶ 55.

**D.**  **This Proceeding**

On May 20, 2013, Norfolk filed its Complaint for Declaratory Judgment, asking this Court to stay the Arbitration Proceeding initiated by FEC's Demand for Arbitration, and to declare that the TIA does not include an arbitration provision, and thus the arbitrator lacks jurisdiction and authority to address disputes arising under the TIA.  (Doc. 1; Complaint).[6] In support of these requests, Norfolk alleges that the TIA and the 1995 Haulage Agreement are "separate, albeit interrelated agreements," and that the TIA incorporated only the "haulage operations" provisions of the Haulage Agreement.  Amended Complaint ¶¶ 28, 29. Concurrently, Norfolk filed the pending Motion to Stay Arbitration, in which it seeks to stay the AAA Arbitration Proceeding "on the grounds that no agreement to arbitrate exists" between Norfolk and FEC, and that while the Court makes this determination, the Arbitration Proceeding should be stayed.  Norfolk Motion to Stay Arbitration at 1.  On May 30, 2013, FEC filed its Motion to Compel Arbitration, in which FEC requests that the Court dismiss this action for lack of subject matter jurisdiction, or at minimum stay the action pending completion of the Arbitration Proceeding.  FEC Motion to Compel Arbitration at 1-2.[7]

---

[6]  Norfolk alleges that the Court had diversity of citizenship jurisdiction.  Because of deficiencies in its allegations, the Court required Norfolk to provide the Court with sufficient information as to the citizenship of the parties so that the Court could determine whether it indeed has diversity jurisdiction over this matter.  (See Docs.11, 13, 18, 24).  To do so, Norfolk filed a Second Amended Complaint in which it amended its jurisdictional allegations.  That Second Amended Complaint is now the operative complaint.  (Doc. 28; Amended Complaint).  Although filed after the pending motions, the Second Amended Complaint made no changes other than clarifying the jurisdictional allegations.  Accordingly the Court in its discretion will consider the pending motions as if directed at the Second Amended Complaint.

[7]  The Court notes that FEC advises that the arbitrator in the AAA Arbitration Proceeding has made a ruling on Norfolk's Objection to Arbitration.  (See Doc. 27; FEC Notice of Ruling in Arbitration Proceeding at 2).  The Court does not consider that ruling in any way in resolving the competing motions at issue here.

## II.     The Parties' Arguments

Norfolk argues that the Court must determine the gateway question of arbitrability, that is, whether the parties agreed in the TIA to submit a dispute arising under that agreement to arbitration. (Doc. 21; Norfolk's Response at 2; Doc. 35; Norfolk Sur-Reply at 1-2).  As such, Norfolk contends that the Court "must interpret the TIA and determine if it contains an arbitration clause."  Norfolk Sur-Reply at 2.  With respect to that issue, Norfolk contests the existence of an arbitration provision, arguing that the TIA does not include a requirement that the parties arbitrate disputes arising under the TIA, Norfolk Response at 3, 11-12, 15; Norfolk Sur-Reply at 1-2, because the "clear and unambiguous terms of the TIA demonstrate that the parties did not agree to arbitrate disputes regarding the TIA."  Norfolk Sur-Reply at 3.  Additionally, Norfolk contends that the AAA Commercial Rules assigning arbitrability to the arbitrator have no application to the dispute before the Court; "until the Court determines whether the TIA includes an arbitration provision . . . . "  Norfolk Response at 4.  Norfolk urges the Court to conclude that the TIA is a "stand alone agreement," containing all essential contract terms, and lacking an arbitration clause.  Id. at 4, 5.  Norfolk argues that the TIA incorporates by reference only the "haulage operations" provisions of the Haulage Agreement and omits the arbitration provision, and that had the parties intended to incorporate provisions beyond those relating to "haulage operations," they would not have specified the limit of incorporation.  Id. at 6-8 (citing TIA ¶ 3(A)); Norfolk Sur-Reply at 4, 6-7.  Additionally, Norfolk contends that the title of the TIA, as "Amendment No. 3" to the Haulage Agreement, was inserted only "'for convenience,'" and that the Recitals referencing the Haulage Agreement are not operative contract language that would lead to a conclusion that the TIA should be

construed or interpreted to include the arbitration provision of the Haulage Agreement. Norfolk Sur-Reply at 5, 7.

FEC, on the other hand, contends that this lawsuit should be stayed or dismissed because the dispute between the parties properly should be submitted to arbitration.  (Doc. 16; FEC Response at 2 (citing 9 U.S.C. § 3)).  FEC notes that it is undisputed that the Haulage Agreement contains an arbitration clause.  Id. at 2.  As such FEC contends that as "the entire Haulage Agreement pertains to 'haulage operations' for [Norfolk] from FEC's Bowden Yard facility in Jacksonville to other locations in Florida and the TIA merely extended the haulage operations to the Titusville Facility, displacing only inconsistent provisions of the Haulage Agreement," FEC Motion to Compel Arbitration at 5, the pricing provision (Article II.2.A) and the arbitration provision of the Haulage Agreement (Article IX) continues to apply to the TIA, as the third amendment of the Haulage Agreement.  Id. at 12, 17.  FEC asserts that the parties are "in a dispute over the interpretation of the Art. II, 2, A of the Haulage Agreement, the nature and extent of the termination of the Haulage Agreement and the nature of the TIA as an amendment to the Haulage Agreement."  FEC Response at 4.  In this regard, FEC argues,

> FEC's Demand for Arbitration requests the arbitrator to determine whether FEC can cease performing haulage operations to Titusville due to [Norfolk's] breaches of terms within the Haulage Agreement that FEC contends have application to the TIA, . . . [and] whether the broad arbitration provision in the Haulage Agreement applies to the disputes between the parties herein is an issue which should be determined by the arbitrator.

FEC Response at 3.  As to the resolution of this dispute, FEC contends that the TIA is not a "stand alone" agreement, but rather an amendment to the Haulage Agreement.  FEC

Response at 11; FEC Reply at 9.  Further, FEC argues that as to the question of arbitrability, the Haulage Agreement arbitration provision adopts the Commercial Rules of the AAA, which specifically provide that the arbitrator must decide gateway issues of arbitrability.  Id. at 6-7; FEC Motion to Compel Arbitration at 20-21; FEC Reply at 6.  Finally, FEC contends that its 2011 termination of the Haulage Agreement, effective in 2012, was a "qualified termination" applying to all locations other than Titusville.  FEC Motion to Compel Arbitration at 7, 12.

## III.   Discussion

### A.   Applicable Law

FEC's Motion to Compel Arbitration is brought pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (FAA).[8]  Section 2 of the Act provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such  contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. §2.  This provision of the FAA represents "'a congressional declaration of a liberal federal policy favoring arbitration agreements.'"  Davis v. S. Energy Homes, Inc., 305 F.3d 1268, 1273 (11th Cir. 2002)(quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp, 460 U.S. 1, 24 (1983)).  Federal policy, therefore, requires courts to "construe arbitration clauses generously, resolving all doubts in favor of arbitration[.]" Becker v. Davis, 491 F.3d

---

[8]  "Enacted pursuant to the Commerce Clause, the FAA applies only to a contract 'evidencing a transaction involving [interstate] commerce.'" Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1370 (11th Cir. 2005)(quoting 9 U.S.C. § 2).  The Court finds, and the parties do not argue otherwise, that the commerce requirement is satisfied and the FAA is applicable.

1292, 1305 (11th Cir. 2007).  As such, "upon being satisfied that the issue involved . . . is referable to arbitration under such an agreement, [the Court] shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.

Section 4 of the FAA allows "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to "petition any United States district court which, save for such agreement, would have jurisdiction . . . of the subject matter of a suit arising out of the controversy between the parties,[9] for an order directing that such arbitration proceed in the manner provided for in such agreement."  See 9 U.S.C. § 4.  The Court uses a two-step inquiry to assess the merits of a motion to compel arbitration under FAA Section 4.  See Klay v. All Defendants, 389 F.3d 1191, 1200 (11th Cir. 2004).  "The first step is to determine whether the parties agreed to arbitrate the dispute." Id. (citation omitted).  The second step "involves deciding whether 'legal constraints external to the parties' agreement foreclosed arbitration.'" Id. (quotation omitted).  There being no argument that external legal constraints proper for judicial review foreclose arbitration,[10] the case at bar turns on resolution of the initial inquiry—whether Norfolk and FEC agreed to arbitrate the instant dispute.  See id.

---

[9]   Because Section 4 of the FAA does not confer subject matter jurisdiction on federal courts, for an action to compel arbitration to fall within the jurisdiction of the Court there must be some independent basis for jurisdiction over the underlying dispute.  See Baltin v. Alaron Trading, Corp., 128 F.3d 1466, 1469 (11th Cir. 1997).  In the instant case, jurisdiction is premised on diversity of citizenship, see 28 U.S.C. § 1332, and the Court is satisfied of its jurisdiction over the action.

[10]   Norfolk suggests that the application of the Haulage Agreement pricing provision (Article II.A.2) to the TIA is "anticompetitive under applicable antitrust laws."  See Norfolk Response at 8-10. However, Norfolk's argument is not directed toward any external legal constraints to the enforcement of the Haulage Agreement's arbitration provision.

"Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements." Employers Ins. of Wausau v. Bright Metal Specialties, Inc., 251 F.3d 1316, 1322 (11th Cir. 2001) (citation omitted). Thus, in determining whether the parties agreed to arbitrate a dispute, the Court applies the federal substantive law of arbitrability as applicable to any arbitration agreement within the FAA's coverage. Klay, 389 F.3d at 1200 (citation omitted). Although "[t]his inquiry must be undertaken against the background of a 'liberal federal policy favoring arbitration agreements[,]' . . . [b]ecause arbitration is a matter of contract," the policy in favor of arbitration cannot supplant the requirement of an agreement to arbitrate. Id. (citations omitted). In short, "arbitration is 'a matter of consent, not coercion[,]'" and "a party ordinarily will not be 'compelled to arbitrate unless that party has entered into an agreement to do so.'" World Rentals and Sales, LLC v. Volvo Constr. Equip. Rents, Inc., 517 F.3d 1240, 1244 (11th Cir. 2008) (quotations omitted)

In Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83-85 (2002), the Supreme Court clarified the respective roles of courts and arbitrators with respect to arbitration agreements. Notwithstanding the policy in favor of arbitration agreements, the question of arbitrability - that is whether the parties have submitted a particular dispute to arbitration - is properly a judicial determination for the court. Id. The question of arbitrability has a limited scope, however, and encompasses only the "narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter [and] where they are not likely to have thought that they had agreed that an arbitrator would do so[.]" Id. Thus, in Howsam, the Court concluded that the question of arbitrability is limited to circumstances

where "reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate." Id. at 83-84.  Such gateway disputes for the court include "whether the parties are bound by a given arbitration clause" and "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy[.]" Id. at 84.  In contrast, "general circumstance[s] where parties would likely expect that an arbitrator would decide the gateway matter" do not present a "'question of arbitrability'" for the court.  Id.  Howsam, therefore, instructs that, absent an agreement to the contrary, issues of "substantive" arbitrability are for courts to decide, while issues of "procedural" arbitrability are for arbitrators to decide.  Id. at 85.  Substantive issues of arbitrability concern "whether a particular dispute falls within the scope of an arbitration clause" and "the necessary threshold question of whether that clause is enforceable."  See Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1109 (11th Cir. 2004).

More recently, in Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 130 S.Ct. 2847 (2010), the Court further examined the respective roles of the court and the arbitrator in determining threshold issues of arbitrability.  There, the Court reiterated that "whether the parties have agreed to 'submit a particular dispute to arbitration' is typically an 'issue for judicial determination.'" Granite Rock, 130 S.Ct. at 2855 (quoting Howsam, 537 U.S. at 83 (internal quotation marks omitted)).  Additionally, the Court affirmed that "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide."  Id. at 2855-56.  As such, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute."  Id. at 2856 (emphasis in original).  Thus, arbitrability necessarily involves two questions: 1) whether an arbitration

agreement exists, which calls into question contract formation; and 2) whether the arbitration provision applies to the dispute at issue, which involves a determination of the scope of the arbitration agreement.  See Granite Rock, 130 S.Ct. at 2856 & n.6, 2857-58, 2858-59; see also e.g. Lambert v. Austin Ind., 544 F.3d 1192, 1195 (11th Cir. 2008).  "[O]nce a court is satisfied with the 'formation of the parties' arbitration agreement' and 'the applicability of the specific arbitration clause that a party seeks to have the court enforce,' . . . reference to an arbitrator to resolve any outstanding issue is appropriate."  Solymar Inv., Ltd. v. Banco Santander, S.A., 672 F.3d 981, 993 (11th Cir. 2012).  Indeed, "the FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement."  Lambert, 544 F.3d at 1195 (citing 9 U.S.C. §§ 2-4).

With regard to the question of whether an arbitration provision applies to the dispute at issue, the Supreme Court has instructed that where the parties have agreed to arbitrate some matters pursuant to an arbitration clause, "the 'law's permissive policies in respect to arbitration' counsel that 'any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration.'"  Granite Rock, 130 S.Ct. at 2857 (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 945 (1995)(additional quotation marks and citation omitted).  Indeed, "federal courts interpret arbitration clauses broadly where possible."  Solymar Inv., 672 F.3d at 988.  As such, "'[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'"  First Options, 514 U.S. at 945 (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25)(emphasis added).  Nevertheless, the

presumption in favor of arbitrability must be applied only "where a validly formed and enforceable agreement is ambiguous about whether it covers the dispute at hand." Granite Rock, 130 S.Ct. at 2858.

Although the question of whether parties submitted a particular dispute to arbitration is typically a judicial determination, such is not the case where the parties "'clearly and unmistakably provide otherwise.'" Howsam, 537 U.S. at 83 (citation omitted)(arbitrability is an issue for the Court unless the parties "'clearly and unmistakably provide otherwise'"). Indeed, parties may agree to arbitrate the question of arbitrability. See Granite Rock, 130 S.Ct. at 2856 n.5; First Options, 514 U.S. at 943 (the question of "'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter. Did the parties agree to submit the arbitrability question itself to arbitration?" (emphasis in original)). Under the FAA, a delegation of authority to an arbitrator "is valid, 'save upon such grounds as exist at law or in equity for the revocation of any contract.'" Given v. M&T Bank Corp. (In re Checking Account Overdraft Litig.), 674 F.3d 1252, 1255 (11th Cir. 2012)(quoting 9 U.S.C. § 2).[11] As such, "[c]ourts should enforce valid delegation provisions as long as there is 'clear and unmistakable' evidence that the parties manifested their intent to arbitrate a gateway question.'" Id. (quoting Rent-A-Center, West, Inc. v. Jackson, 130 S.Ct. 2772, 2777-78 & n.1 (2010)). In this context, an agreement to arbitrate the gateway question of arbitrability "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does

---

[11]   As such, the interpretation of the arbitrability agreement is also generally a matter of state law. See Given, 674 F.3d at 1255.

on any other." <u>Rent-A-Center</u>, 130 S.Ct. at 2777-78; <u>see also</u> <u>Given</u>, 674 F.3d at 1255. Thus, when faced with the question of whether a particular dispute is subject to arbitration, a court must inquire whether the parties agreed to submit the arbitrability question itself to arbitration. <u>First Options</u>, 514 U.S. at 943. In making this determination, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." <u>Id.</u> at 944 (quoting <u>AT&T Tech., Inc. v. Commc'n Workers of Am.</u>, 475 U.S. 643, 649 (1986)(internal brackets omitted)). However, where a delegation provision in an arbitration clause is "clear and unmistakable," the decision of whether a dispute is within the scope of the arbitration agreement is a decision for the arbitrator, not the court. <u>Id.</u> at 1256-57.

[SPACE INTENTIONALLY LEFT BLANK]

B.    <u>Analysis</u>[12]

FEC's Motion to Compel Arbitration invokes the arbitration provision in the Haulage

Agreement.  Norfolk does not dispute that the 1995 Haulage Agreement is a valid contract,

containing a valid arbitration provision.  Rather, Norfolk argues that  the TIA is a stand-alone

contract that does not contain an arbitration provision, and that the arbitration provision in the

Haulage Agreement is inapplicable to this dispute which it says arises under the TIA.  Under

Florida law, "[t]he language used in a contract is the best evidence of the intent and meaning

of the parties.'" <u>Smith v. Rainey</u>, 747 F. Supp.2d 1327, 1341 (M.D. Fla. 2010)(quoting <u>Jenne</u>

---

[12]    Norfolk has submitted the affidavit of Shawn Tureman, Norfolk's Director of Intermodal Marketing, in opposition to FEC's Motion to Compel Arbitration.  (Doc. 21-1; Tureman Affidavit).  In the Affidavit, Tureman states that the "TIA reflects the terms of a different deal" between FEC and Norfolk, and that the parties "intended for the TIA to stand alone from the Haulage Agreement."  Tureman Affidavit ¶¶ 12, 15; <u>see also</u> Norfolk Response at 5-6.  In contrast, FEC has submitted the declaration of former in-house counsel Kenneth Charron who states that when he reviewed and approved the terms of the TIA in 2008, he "understood and intended, as did FEC, that all terms of the Haulage Agreement that were not directly inconsistent with the TIA would be a part of and would apply to the TIA."  (Doc. 34-1; Charron Declaration ¶ 8).

    Notably, despite submitting such sworn testimony, both parties maintain that the agreements at issue here are unambiguous.  Norfolk argues that the Court should determine that this dispute should not be submitted to arbitration because the "clear and unambiguous terms of the TIA demonstrate that the parties did not agree to arbitrate disputes regarding the TIA."  Norfolk Sur-Reply at 3.  Indeed,  Norfolk "maintains that the plain language of the TIA demonstrates there was no agreement to arbitrate, and therefore the Court need not consider parol evidence."  <u>Id.</u> at 9.  FEC likewise contends that "the agreements in question are not ambiguous and that the issues before the Court should be determined based upon the four corners of such agreements and without resort to . . . parol evidence. . . ."  Charron Declaration at 1; <u>see also</u> FEC Reply at 1-4.

    Under Florida law, "'a phrase in a contract is "ambiguous" only when it is of uncertain meaning, and may be fairly understood in more ways than one.'"  <u>Solymar Inv.</u>, 672 F.3d at 991 (quoting <u>Emergency Assocs. of Tampa, P.A. v. Sassano</u>, 664 So.2d 1000, 1002 (Fla 2d DCA 1995)(quotation marks and internal citations omitted)).  While a court may consider parol evidence to explain the words used and the parties' intent in the event the words of a contract are ambiguous,  "in the absence of such ambiguity, parol evidence is inappropriate."  <u>Id.</u> (citing <u>The Fla. Bar v. Frederick</u>, 756 So.2d 79 (Fla. 2000)).  Here, the parties agree that the contracts at issue here are not ambiguous.  In addition, the parties do not dispute that the 1995 Haulage Agreement and the TIA are both valid contracts, and that the Haulage Agreement includes a valid arbitration provision, which has been invoked by FEC in its Motion to Compel Arbitration.  For these reasons, the Court does not consider the Tureman Affidavit or Charron Declaration in reaching its determination regarding whether the dispute between the parties should be submitted to arbitration.

v. Church & Tower, Inc., 814 So.2d 522, 524 (Fla. 4th DCA 2002)); see also Gendzier v. Bielecki, 97 So.2d 604, 608 (Fla. 1957).  With respect to the Haulage Agreement, the Court determines that the parties entered into a valid written arbitration agreement that is enforceable "'under ordinary state-law principles.'"  See e.g. Granite Rock, 130 S.Ct. at 2855-56 (questions of contract formation are generally for the courts to decide); Solymar Inv., 672 F.3d at 990 (contract formation questions are reserved for courts of law).

By arguing that the TIA does not contain an arbitration provision, and thus this dispute is not subject to arbitration, Norfolk miscasts the issue.  FEC seeks to invoke the arbitration provision in the Haulage Agreement.  Thus, the issue is not whether the TIA contains an arbitration provision.  The question with regard to arbitrability, is whether the arbitration provision in the Haulage Agreement reaches the parties' dispute regarding the pricing provision, Norfolk's alleged breach of the TIA, and FEC's termination of the TIA.  This raises a question as to the scope of the Haulage Agreement's arbitration provision, and whether the disputed issues relating to the TIA fall within the scope of that arbitration provision.  See Granite Rock, 130 S.Ct. at 2856 n.6, 2857-58, 2858-59; Lambert, 544 F.3d at 1195.  Indeed, the scope of an arbitration agreement may reach disputes arising under related agreements. The Eleventh Circuit has recognized that "an arbitration clause in an agreement sometimes can require arbitration of a dispute arising not from the agreement itself but from another source, including another agreement . . . when the arbitration clause applies to the dispute at issue."  Int'l Underwriters AG v. Triple I: Int'l Inv., Inc., 533 F.3d 1342, 1346 (11th Cir. 2008)(finding in that instance that the  arbitration provision in a related escrow agreement did not evince intent to arbitrate claims related to the underlying "main agreement"); see also

Northbrook Indem. Co. v. First Auto. Serv. Corp., No. 3:07-cv-683-J-32JRK, 2008 WL 3009899, at *5 (M.D. Fla. Aug. 1, 2008)(observing that whether arbitration provision of earlier reinsurance contract between the parties reached their dispute under four later placement slips raises a question as to the scope of the arbitration agreement, and, determining that it did, compelling arbitration of the dispute)[13]; NRP Group, Inc. v. Hydropress, LLC, No. 06-60593-CIV-MORENO, 2007 WL 201259, at *4 (S.D. Fla. Jan. 24, 2007)(compelling arbitration of claims for breach of a nondisclosure agreement based on arbitration clause in related letter agreement between the same parties, and stating that "the scope of the letter agreement's [arbitration] clause will determine arbitrability" of additional claims under various theories).

In the Haulage Agreement, the parties agreed that

> Any dispute arising between the parties with respect to any provision of this Agreement, including but not limited to the meaning of "predominant" as that term is used in Article V, that cannot be settled by the parties themselves will be settled under the Commercial Arbitration Rules of the American Arbitration Association.

Haulage Agreement Article IX.  The Eleventh Circuit Court of Appeals has held that when parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate issues of arbitrability to an arbitrator.  Terminix Int'l Co., LP v. Palmer Ranch Ltd.P'ship, 432 F.3d 1327, 1332 (11th Cir. 2005).  Indeed, in Terminix, the court found the inclusion of the

---

[13]  "Although an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

AAA Commercial Rules in the arbitration provision to constitute evidence of a clear and unmistakable intent to delegate arbitrability decisions to the arbitrator.  In doing so, the court noted that the applicable AAA Rules provided that "'[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.'" Id. (quoting American Arbitration Association Commercial Arbitration Rules).  The court determined that by incorporating the AAA Commercial Rules into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide issues of arbitrability, including determining the scope of the arbitration clause.  Terminix, 432 F.3d at 1332; see also e.g. Shea v. BBVA Compass Bancshares, Inc., No. 1:12-cv-23324-KMM, 2013 WL 869526, at *4 (S.D. Fla. March 7, 2013); S. Farms Ltd. v. Am. Farmland Investors Corp., No. 6:06-cv-309-Orl-22DAB, 2006 WL 2038532, at *1-2 (M.D. Fla. July 19, 2006).

Norfolk does not contest that the Haulage Agreement's reference to the AAA Commercial Rules constitutes evidence of a clear and unmistakable mutual intent to delegate decisions regarding arbitrability to the arbitrator.  Instead, Norfolk argues that resort to the AAA Commercial Arbitration Rules is an improper attempt to "bootstrap" the AAA Rules into this dispute.  "[U]ntil the Court determines whether the TIA includes an arbitration provision, no arbitrator can make any determination, and [AAA Commercial] Rule 7 has no applicability."  Norfolk Response at 4.  However, the arbitration provision of the Haulage Agreement, which is the contractual arbitration agreement upon which FEC relies in its Motion to Compel Arbitration provides that "[a]ny dispute arising between the parties with respect to any provision of this Agreement . . . that cannot be settled by the parties

themselves will be settled under the Commercial Arbitration Rules of the American Arbitration Association." Haulage Agreement, Article IX.  Significantly, the applicable AAA Commercial Rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, <u>scope</u>, or validity of the arbitration agreement or the <u>arbitrability of any claim</u> or counterclaim."   AAA Commercial Rule 7(a)(emphasis added).[14]  Thus, the Rules by which the parties agreed their disputes under the Haulage Agreement would be resolved delegate the issue of arbitrability of a dispute to the arbitrator.  Applying ordinary state law principles that govern the formation of contracts, the parties have evinced a clear and unmistakable intent to arbitrate certain questions, including the validity, enforceability and scope of the arbitration agreement.  <u>See</u> <u>First Options</u>, 514 U.S. at 944; <u>Terminix</u>, 432 F.3d at 1332.

---

[14]   Rule 7 provides:

R-7.  Jurisdiction

(a)     The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

(b)     The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part.  Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract.  A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

(c)     A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection.  The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

AAA Commercial Rule 7 (October 1, 2013)(.pdf version available for download at adr.org).

"[W]here a contract is facially complete and contains no ambiguous terms, Florida law requires those contracts be enforced in accordance with their terms." Solymar Inv., 672 F.3d at 991. Here, Norfolk's argument that this dispute under the TIA is not arbitrable and outside the scope of the Haulage Agreement's arbitration provision is a question of arbitrability which, under the parties' arbitration agreement, must be presented to the arbitrator for resolution. See Given, 674 F.3d at 1256-57; Shea, 2013 WL 869526, at *4; Mercury Telco Grp., Inc. v. Empresa De Telecommunicaciones De Bogata, 670 F. Supp.2d 1350 (S.D. Fla. 2009); S. Farms, 2006 WL 2038532, at *1-3. It is for the arbitrator to decide the meaning of "haulage operations" under the Haulage Agreement and TIA, see TIA ¶ 3 (A); whether the pricing provision of the Haulage Agreement, Article II.2.A, applies to the Titusville haulage operations under TIA; and if so, whether Norfolk violated that provision such that FEC is entitled to terminate the TIA at this point in time.

Norfolk argues, as an alternative defense to arbitration, that the arbitration provision does not survive FEC's termination of the Haulage Agreement. See Norfolk Response at 14. This likewise, is a question for the arbitrator to resolve. The argument is a challenge to the underlying Haulage Agreement, not to the arbitration provision itself. Any "challenge to the validity of a contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 449 (2006). The Supreme Court has reasoned that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance" because "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." Buckeye Check Cashing, 546 U.S. at 445-46. Moreover, in this

case the incorporation of the AAA Commercial Rules into the arbitration provision further underscores that this decision is for the arbitrator.

For the forgoing reasons, the gateway question of whether the relief sought by FEC in its Demand for Arbitration is arbitrable pursuant to the Haulage Agreement arbitration provision (Haulage Agreement Article IX), is due to be referred to arbitration for determination. Thereafter, whether the substantive dispute between the parties is due to be arbitrated depends on the arbitrator's resolution of the gateway arbitrability question. As such, the Court will not resolve the issues raised in the Second Amended Complaint at this time, but must either stay or dismiss the action in favor of the pending arbitration proceeding.

## IV.     Determination Whether to Stay the Proceedings or Dismiss the Action

In its Motion to Compel Arbitration, FEC requests that this Court dismiss the instant action, or in the alternative stay the proceeding, and compel arbitration. See FEC Motion to Compel Arbitration at 22. The FAA provides that "upon being satisfied that the issue involved . . . is referable to arbitration," the district court "shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . ." 9 U.S.C. § 3. Courts of appeals have reached different conclusions, however, as to whether a district court has discretion to dismiss a claim (rather than stay the proceedings) where it finds all claims before it to be arbitrable. See Lloyd v. Hovensa, LLC, 369 F.3d 263, 268-69 (3d Cir. 2004)(discussing circuit split and comparing cases). The Eleventh Circuit has held that the proper course is to stay the proceedings rather than dismiss the action. See Bender v. A.G. Edwards & Sons, Inc., 971 F.2d 698, 699 (11th Cir. 1992) ("The district court properly found that the state law claims were subject to arbitration, but erred in dismissing the claims rather

than staying them. Upon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration."); see also Klay v. All Defendants, 389 F.3d 1191, 1203-04 (11th Cir. 2004)("For arbitrable issues, the language of Section 3 indicates that the stay is mandatory."); but see Samadi v. MBNA Am. Bank, N.A., 178 Fed. Appx. 863, 864, 866 (11th Cir. 2006)(affirming district court's dismissal of case when compelling arbitration without discussing a stay); Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1379 (11th Cir. 2005)(same); Jackson v. Cintas Corp., 425 F.3d 1313, 1315-16, 1318 (11th Cir. 2005)(same).   In accordance with Bender,[15] this Court finds that upon determining that arbitration is warranted the Court is required to stay the proceeding pending arbitration.  See Bender, 971 F.2d at 699.  Moreover, even if this Court has the discretion to dismiss the action rather than stay the proceeding, it would nonetheless stay the proceeding. See Downey v. Robert W. Baird & Co. Inc., No. 6:07-cv-1180-Orl-31DAB, 2007 WL 2729578, at * 2 (M.D. Fla. Sept. 18, 2007)(determining that the Eleventh Circuit would likely afford discretion to dismiss a case rather than stay the proceeding where all claims before the court where arbitrable, but nonetheless determining that "because a settlement of FLSA claims would appear to require judicial supervision, the Court finds that a stay is the more appropriate course to take here").

---

[15]   Recognizing some inconsistency among the above-cited cases, the Court notes that Bender appears to be the first Eleventh Circuit decision addressing the issue of whether a district court, in compelling arbitration, may dismiss the case rather than stay the proceedings.  "Under the well-established prior panel precedent rule of this Circuit, the holding of the first panel to address an issue is the law of this Circuit . . . unless and until the first panel's holding is overruled by the [Eleventh Circuit] sitting en banc or by the Supreme Court."  Smith v. GTE Corp., 236 F.3d 1292, 1300 n.8 (11th Cir. 2001).

Accordingly, it is hereby

**ORDERED**:

1.      Plaintiff Norfolk Southern Railway Company's Motion For Stay Or Abatement Of Arbitration And Supporting Memorandum Of Law (Doc.5) is **DENIED**.

2.      Defendant Florida East Coast Railway, LLC's Motion To Compel Arbitration And To Dismiss Or Alternatively Stay Litigation Pending Arbitration (Doc. 15) is **GRANTED IN PART AND DENIED IN PART**.  The motion is granted to the extent that:

      a.      The parties are **DIRECTED** to arbitrate this action in accordance with the arbitration agreement between them.  (Doc. S-4; Haulage Agreement Article IX).

      b.      This case is **STAYED** pending the completion of the arbitration proceedings and notification from the parties that the case is due to be reopened or dismissed.

In all other respects the Motion is **DENIED**.

3.       The Clerk of the Court is **DIRECTED** to terminate any pending motions or deadlines and administratively close the file.

4.      The parties shall file a status report upon the conclusion of the arbitration.  If the arbitration is not completed by **October 31, 2014**, then the parties shall file a status report at that time and every 120 days thereafter until the arbitration is completed.

**DONE AND ORDERED** in Jacksonville, Florida, this 25th day of February, 2014.

**MARCIA MORALES HOWARD**
United States District Judge

lc12
Copies to:
Counsel of Record